**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


Ottawa Township Board of Trustees,                    Case No. 3:17CV228

          Plaintiff

         v.                                                          **ORDER**

New Par, d/b/a Verizon Wireless, et al.,

          Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STC Towers, LLC,                                              Case No. 3:17CV419

          Plaintiff

         v.                                                          **ORDER**

Nicholas K. Rettig, et al.,

          Defendants


These related cases ask whether two townships needed to comply with an Ohio statute that specifies the steps a township must take if it wishes to use its zoning code to regulate the construction of a cellular telecommunications tower.

Ohio law broadly forbids townships to regulate public utilities within their jurisdictions. O.R.C. § 519.211(A).

But a township may apply its zoning code to the construction of a telecommunications tower if either a township trustee or the owner of land adjacent to the proposed tower site objects, and the board of trustees "request[s] that the fiscal officer of the township send the person proposing to construct the tower written notice that the tower is subject to" the township's

zoning code. O.R.C. § 511.219(B)(4)(a). A township must follow these steps only if the telecommunications tower is "proposed to be owned or principally used by a public utility engaged in the provision of telecommunications services." O.R.C. § 511.219(B)(1)(b).

In these cases, STC Towers, LLC, planned to build telecommunications towers in Ottawa Township and Napoleon Township. Objections to the project arose in Ottawa Township, and the Board of Trustees – but not the Fiscal Officer – sent STC written notice that it had to comply with the township's zoning code. In Napoleon Township, the Zoning Inspector objected to STC's project there, and he – rather than the Fiscal Officer – issued a stop-work order forbidding further construction.

These events precipitated the filing of two lawsuits – one in the Common Pleas Court of Putnam County, Ohio by the Ottawa Township Board of Trustees (and removed to this court by STC and New Par on the basis of diversity jurisdiction), the other in this court by STC against Napoleon Township and Nicholas Rettig, the township's current Zoning Inspector.

STC alleges that the townships' efforts to regulate the proposed towers violates § 519.211 and effectively prohibits the "provision of personal wireless services," in violation of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(i)(II). It also brings claims for tortious interference, declaratory and injunctive relief, and money damages.

These claims depend in large part on whether: 1) the towers are "proposed to be . . . principally used by a public utility"; and 2) if so, the undisputed failure of each township's Fiscal Officer to send the notice referred to in § 519.211(B)(4)(a) bars the townships from regulating the towers.

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1332(a)(1), and 1367(a).[1]

Pending are the parties' counter-motions for summary judgment. For the reasons that follow, I grant both townships' motions in their entirety and deny STC and New Par's motions for partial summary judgment in both cases.

## Background

### A. *Ottawa Township* Case

STC is an Indiana company that "operates . . . as an agent for" New Par, which does business as Verizon Wireless. (Doc. 13, PageID 180 at ¶5, *Ottawa Twp. Bd. of Trustees v. New Par*, Case No. 3:17CV228 (N.D. Ohio)).

New Par, in turn, "is a provider of 'personal wireless services' through its personal wireless service facilities' as those terms are defined in" the Telecommunications Act. (*Id.*, PageID 179 at ¶2); *see also* 47 U.S.C. § 332(c)(7)(C)(i). New Par holds a "Certificate of Public Convenience and Necessity" from the Public Utilities Commission of Ohio (PUCO) "to provide competitive telecommunications services in the State of Ohio[.]" (Doc. 44–1 at 3, *Ottawa Twp.* docket).

In 2015, STC developed plans to build a cell phone tower on a residentially zoned parcel in Ottawa Township and lease the tower to New Par.

---

[1] I have diversity jurisdiction over the *Ottawa Township* case. *See Ottawa Twp. Bd. of Trustees v. New Par*, 2017 WL 2928156 (N.D. Ohio 2017) (Carr, J.) (discussing removal of the Township's case on the basis 28 U.S.C. § 1332(a)(1)); (Doc. 27, *Ottawa Twp. Bd. of Trustees v. New Par*, Case No. 3:17CV228 (N.D. Ohio) (finding amount in controversy satisfied)). In the *Rettig* case, I have federal-question jurisdiction over STC's Telecommunications Act claim and supplemental jurisdiction over the related state-law claims. (Doc. 1, *STC Towers v. Rettig*, Case No. 3:17CV419 (N.D. Ohio)).

As Ohio law requires, *see* O.R.C. § 519.211(B)(3)(a) & (b), STC provided written notice of its intent to erect the tower, along with a description of the proposed tower site, to the owners of adjacent properties and the Ottawa Township Board of Trustees.

The township's three Trustees received the notice and discussed STC's project during a January 12, 2016 meeting. Based on their own and their constituents' objections to the proposed tower, the Trustees directed the township's Fiscal Officer, Barb Rieman, to draft a letter setting forth the objection and informing STC that it must comply with the township's zoning code.

Rieman testified that she drafted the letter after the January 12 meeting and circulated it to the Trustees via email. (Doc. 45 at 50, *Ottawa Twp.* docket). Thereafter, the three Trustees signed the letter, and one of the Trustees placed it in the mail. (*Id.* at 29, *Ottawa Twp.* docket). Rieman's name or office does not appear on the letter. (Doc. 49–2, PageID 613, *Ottawa Twp.* docket).

STC took the position that the written objection was a nullity because the Trustees themselves – rather than the Fiscal Officer – had issued it. (Doc. 13, PageID 183–84 at ¶¶31–39, *Ottawa Twp.* docket). After nearly a year of back-and-forth between the parties, the Board of Trustees sued STC and New Par in common pleas court. The state court issued an ex parte order forbidding STC from starting construction "until such time as [New Par] can establish compliance with the Zoning Resolution of Ottawa Township[.]" (Doc. 1–2, PageID 117, *Ottawa Twp.* docket).

STC then removed the case to this court and filed a counterclaim, alleging that the Trustees violated O.R.C. § 519.211 by attempting to regulate the tower in the absence of a written notice from the Fiscal Officer. It also alleged that the Trustees' conduct violated the

Telecommunications Act of 1996 and tortiously interfered with its business. (Doc. 13, *Ottawa Twp.* docket).

The Trustees filed an amended complaint, seeking an order requiring STC and New Par to comply with the township's zoning code and an injunction precluding them from constructing the tower until they are in compliance with the zoning code. (Doc. 12, PageID 176, *Ottawa Twp.* docket).

## B. *Rettig* Case

STC developed similar plans to build a cell tower in a residentially zoned district of Napoleon Township. The company issued the required notices to both the township's Board of Trustees and affected landowners. In August, 2015, however, the Township's then Zoning Inspector, Hal Luebker, notified STC that the township "would require the issuance of a conditional use permit for the proposed tower." (Doc. 1, ¶33, *STC Towers, LLC v. Rettig*, Case No. 3:17CV419 (N.D. Ohio)).

STC responded that Luebker's objection did not empower the township to regulate the proposed tower because: 1) the Board of Trustees never requested that the township's Fiscal Officer issue a written notice requiring STC to comply with the township's zoning rules; and 2) the Fiscal Officer never sent such a notice. (*Id.*, ¶¶35–36; Doc. 37, PageID 278, *Rettig* docket).

The company proceeded apace with construction, but in February, 2017, Nicholas Rettig, who had succeeded Luebker as the Township's zoning inspector, issued a stop-work order forbidding further construction. (Doc. 1–19 at 1, *Rettig* docket). STC responded by suing the Township and Rettig in this court, raising the same claims against those defendants as it brought in the *Ottawa Township* litigation.

## Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, parties have filed cross-motions for summary judgment, the Court grants or denies each motion for summary judgment on its own merit, applying the standards described in Fed. R. Civ. P. 56." *Clarendon Nat'l Ins. Co. v. Lexington Ins. Co.*, 312 F. Supp. 3d 639, 646 (N.D. Ohio 2018) (Carr, J.) (internal quotation marks omitted).

## Discussion

### A. Compliance with O.R.C. § 519.211(B)

STC argues that it is entitled to summary judgment on its claims that the townships have no power to insist that STC build the proposed towers in compliance with the townships' zoning codes. This is so, the company maintains, because: 1) the Trustees of both townships did not, as O.R.C. § 519.211(B)(4)(a) requires, request that their respective Fiscal Officer send a written notice advising STC that it was subject to the zoning code; and 2) neither Fiscal Officer in fact sent such a notice to STC.

The Trustees raise two arguments in response.

First, they contend that the limits on their power to regulate telecommunications towers apply only if the entity building the tower qualifies as a "public utility." (Doc. 40, PageID 426, *Rettig* docket). The Trustees then argue that STC "has completely failed to establish that it qualifies as a 'public utility'" for purposes of O.R.C. § 519.211. (*Id.*). For that reason, the Trustees contend, they may regulate STC's proposed towers without regard to the requirements of § 519.211(B).

Second, the Trustees emphasize that the purpose of § 519.211(B)(4)(a) is to "make sure the person intending to construct the tower receives notice that the township is invoking its zoning powers under R.C. 519.211 with respect to the desired construction project." (Doc. 40, PageID 430, *Rettig* docket). Given that, and because the statute "does not state that the notice can 'only' be issued by the Fiscal Officer of a township" (*id.*), the Trustees contend that they properly invoked their powers to regulate the towers.

### 1. Rules of Statutory Interpretation

Because the parties' claims turn on questions of statutory interpretation, I recite the principles relevant to such interpretation as the Ohio Supreme Court has articulated them.

In statutory interpretation cases, "[a] court's main objective is to determine and give effect to legislative intent." *Satterfield v. Ameritech Mobile Comm'ns, Inc.*, --- N.E.3d ----, 2018 WL 6628042, *3 (Ohio 2018).

"The intent of the General Assembly must be determined primarily from the language of the statute itself." *Id.*

"When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, [the court] must rely on what the General Assembly has said." *Id.* "Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St. 3d 549, 553 (2000).

### 2. Language of § 519.211

"As a general rule, Ohio law provides that townships have no power under the zoning laws to regulate the location, erection, or construction of any buildings or structures of any public utility." *Symmes Twp.*, *supra*, 87 Ohio St. 3d at 551 (citing O.R.C. § 519.211(A)).

Division (B) of § 519.211 "designates certain circumstances in which [township] zoning boards may exercise power over the construction of telecommunications towers, even if the tower is the property of a public utility." *Campanelli v. AT&T Wireless Servs., Inc.*, 85 Ohio St. 3d 103, 105 (1999).

For purposes of § 519.211(B), a "telecommunications tower" means either a free-standing or attached structure that is proposed to be: 1) constructed on or after October 31, 1996; 2) "is proposed to be owned or principally used by a public utility engaged in the provision of telecommunications services"; 3) "located in an unincorporated area of a township, in an area zoned for residential use"; 4) "at a height that is greater than either the maximum allowable height of residential structures within the zoned area as set forth in the applicable zoning regulations"; and 5) topped with "radio frequency transmission or reception equipment." O.R.C. § 519.211(B)(1)(a)–(e).

Section 519.211(B)(2) provides that "the power so conferred" by division (B) on a township "shall apply to a particular telecommunications tower only upon the provision of a notice, in accordance with division (B)(4)(a) of this section, to the person proposing to construct the tower."

Division (B)(4)(a), in turn, sets up the notification procedures.

A notice under this division may issue only if "the township board of trustees receives notice [of an objection] from a property owner" whose land is adjacent to the proposed tower site or "a board member makes an objection to the proposed location[.]" O.R.C. § 519.211(B)(4)(a). If such an objection is lodged, the statute continues, the board of trustees:

> shall request that the fiscal officer of the township send the person proposing to construct the tower written notice that the tower is subject to the power conferred by and in accordance with division (B)(2) of this section. The notice shall be sent no later than five days after the earlier of the date the board first receives such a

notice from a property owner or the date upon which a board member makes an objection. Upon the date of the mailing of the notice to the person, sections 519.02 to 519.25 shall apply to the tower.

O.R.C. § 519.211(B)(4)(a).

### 3. Whether STC Is a Public Utility

The Trustees argue that § 519.211 does not limit their power to regulate STC's proposed towers because STC has not established that it is a "public utility." Because the statute exempts only "public utilities providers from regulation by township zoning boards," *Campanelli*, *supra*, 85 Ohio St. 3d at 107, the Trustees contend that it does not prevent them from regulating a telecommunication tower built by an entity like STC that is not a public utility.

STC disagrees.

While not claiming that it is a public utility, STC emphasizes that it "acts as an agent for New Par (dba Verizon Wireless)," which PUCO has classified as a public utility. (Doc. 51, PageID 642–43, *Ottawa Twp.* docket).

The company also argues that "the statute does not require STC to show that it is a public utility." (*Id.*, PageID 643, *Ottawa Twp.* docket) (internal emphasis omitted).

Rather, the Trustees must act in accordance with § 519.211 if the telecommunications tower at issue "'is proposed to be owned <u>or principally used</u> by a public utility engaged in the provision of telecommunications services.'" (*Id.*) (quoting O.R.C. § 519.211(B)(1)(b)) (emphasis in original). Because the towers at issue are proposed to be "principally used by" New Par – which is allegedly a public utility – in connection with the provision of telecommunications services, STC argues that the townships cannot use their zoning powers unless they follow the procedures specified in § 519.211(B)(4)(a).

On this score, I agree with STC in part.

Under § 519.211(B)(1)(b), the operative question is not whether the company building the tower is a "public utility," but whether the tower is "proposed to be owned or principally used by a public utility[.]"

Accordingly, if the Trustees wish to regulate the towers that STC proposes to build for the principal use of an alleged public utility like New Par, then they must comply with the other provisions of § 519.211(B), including the notification procedures in division (B)(4)(a). *Cf. Vermillion Twp. Bd. of Trustees v. Christian Broad. Ministries*, 2004-Ohio-3744, ¶¶36–37 (Ohio App. 2004) (trial court erred in holding that telecommunications tower was subject to § 519.211(B) without deciding if tower was owned or principally used by public utility).

Nevertheless, I agree with the Trustees that STC is not entitled to summary judgment on the "public utility" issue. To the contrary, it is the Trustees who are entitled to summary judgment on all claims based on § 519.211 because STC has not cited any evidence that would permit a reasonable fact-finder to conclude that New Par is a "public utility" for purposes of § 519.211.

### a. The "Public Utility" Requirement

Section 519.211 exempts public utilities from regulation by township zoning rules, but the statute does not define the term "public utility."

According to the Ohio courts, "the determination of entities as public utilities is a mixed question of law and fact." *Marano v. Gibbs*, 45 Ohio St. 3d 310, 311 (1989).

The Ohio Supreme Court has "set forth two factors, i.e., public concern and public service, which must be taken into consideration to determine whether an entity is a public utility for purposes of R.C. 519.211." *Rumpke Sanitary Landfill, Inc. v. Colerain Twp.*, 134 Ohio St. 3d 93, 98 (2012).

10

Under the public-service factor, a court should consider whether: 1) "there is a devotion of an essential good or service to the general public which has the legal right to demand or receive this good or service"; 2) the entity "provide[s] its good or service to the public indiscriminately and reasonably"; and 3) the entity has the "obligation to provide the good or service which cannot be arbitrarily or unreasonably withdrawn." *A&B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees*, 64 Ohio St. 3d 385, 389 (1992).

Under the public-concern factor, a court should consider "the good or service provided, competition in the local marketplace, and regulation by governmental authority." *Id.* at 388.

"[T]he business claiming public-utility status bears the burden of offering sufficient evidence on these factors." *Rumpke*, *supra*, 134 Ohio St. 3d at 100.

### b. There Is No Evidence to Support a Rational Finding That New Par is a Public Utility

STC and New Par cite only one piece of evidence to support their position that New Par is a "public utility," such that the tower that STC plans to build for New Par's principal use is, absent compliance with § 519.211(B)(4)(a), exempt from the township's zoning rules: New Par's PUCO Certificate of Public Convenience and Necessity.

The Trustees respond that the PUCO Certificate is insufficient to create a factual dispute on the public-utility question because "'even though an entity is considered a public utility for purposes of PUCO regulation under R.C. Chapter 4905, that designation does not make it a public utility in fact for purposes of the zoning exemption in R.C. 519.211(A).'" (Doc. 56, PageID 848–49, *Ottawa Twp.* docket) (quoting *Coventry Twp. v. Ecker*, 101 Ohio App. 3d 38, 41 (1995)).

I agree.

### i. Case Law

Beginning with its decision in *Freight, Inc. v. Board of Township Trustees of Northfield Center Township*, 107 Ohio App. 288, 290 (1958), the Ohio Court of Appeals has stressed that the mere fact that a private company "is considered a public utility for the purpose of regulation" by PUCO does not suffice "to make it a public utility in fact." This is so, the court explained, because public-utility status turns, not on regulation by PUCO, but on "service to, or readiness to serve, an indefinite public which has a legal right to demand and receive the utility's services or commodities." *Id.* (internal quotation marks omitted).

The court of appeals has reiterated this principle in many cases. *Franklin Twp. v. Meadows*, 130 Ohio App. 3d 704, 710 (1998); *Springfield Twp v. Grable*, 1998 WL 469871, *3 (Ohio App. 1998); *Coventry Twp.*, *supra*, 101 Ohio App. 3d at 41; *Claridon Twp. Zoning Inspector v. Rider*, 1987 WL 14174, *3 (Ohio App. 1987); *McGinnis v. Quest Microwave VII, Inc.*, 24 Ohio App. 3d 220, 221 (1985).

Of these cases, *Meadows* and *Claridon Township* have particular salience.

The defendants in *Meadows*, *supra*, 130 Ohio App. 3d at 707, operated a trucking business on their property in Franklin Township. After the township's zoning inspector determined that the defendants were in violation of the township's zoning code, the defendants claimed that their business was a public utility and therefore exempt from regulation under § 509.211(A). *Id.* at 707–08.

At the ensuing trial on the township's action to enjoin the defendants' business, the defendants "introduced no evidence demonstrating that their trucking business provided an essential service to the general public, or that the public had a legal right to demand it." *Id.* at

709. Nor did the defendants introduce "evidence relating to the nature of their service" that could have satisfied the public-service criterion. *Id.* at 710.

Instead, the defendants – like STC and New Par here – relied solely on the fact that PUCO had classified their business as a public utility.

The trial court "ruled that the defendants had failed to provide sufficient evidence that their trucking business could be classified as a public utility, pursuant to R.C. 519.211(A)," and the court of appeals affirmed. *Id.* at 708. According to the appellate court:

> regulation alone is not dispositive of the question whether an entity's business is a matter of public concern. Along those same lines, although defendants' business is recognized as a public utility by the Public Utilities Commission of Ohio, for purposes of regulation by the Public Utilities Commission, that recognition alone does not establish that classification for purposes of R.C. 519.211.

*Id.* at 710.

A similar result obtained in *Claridon Township*, *supra*, 1987 WL 14174.

The defendant there owned a commercial trucking business that leased its trucks to Blair Cartage, a trucking firm which had "a certificate of common convenience and necessity from P.U.C.O." *Id.* at *2. When the Claridon Township zoning inspector tried to enjoin the defendant from operating his business within the township, defendant responded that a public utility exempt from regulation – *i.e.*, Blair Cartage – used his property in the course of its business. *Id.* The only evidence in the record to support Blair Cartage's claim to being a public utility, however, was its PUCO certificate. *Id.* at *2–3.

On appeal, the court of appeals held that the PUCO certificate was not enough to support a finding that Blair Cartage was a public utility for purposes of § 519.211:

> Even though a motor transportation company [. . .] is considered a public utility for the purpose of regulation by the Public Utilities Commission, that designation of control does not make it a public utility in fact.

\* \* \*

> The test [of] whether it is a public utility * * * is whether the general public indiscriminately has a legal right to use its services, and whether such use of its services cannot be denied or withdrawn at the whim of the owners.
>
> In the instant cause, appellants failed to introduce the testimony of anyone associated with Blair Cartage as to the exact nature of its operations, whether its rates are regulated, or whether it is required to serve all persons without discrimination and upon demand. Without this evidence, it cannot be determined if Blair Cartage is a public utility in fact and therefore entitled to the exemption from township zoning of property it uses in the operation of its business.

*Id.* at *3 (internal quotation marks and citation omitted).

Similar evidentiary shortcomings in *Springfield Township*, *supra*, 1998 WL 469871, led the court of appeals to reject a claim to public-utility status by a company that was registered with PUCO (as opposed to holding a certificate of public convenience and necessity). In that case, the court emphasized, the record was:

> devoid of any evidence regarding whether Appellants' business provided goods to the public indiscriminately and reasonably, whether the goods or services that were allegedly provided to the public were essential, whether the public had a legal right to demand the goods and services of the business, and what type of competition Appellants' business faced.

*Id.*

### ii. There is No Evidence that New Par Is a Public Utility

Given these cases and the record before me, I conclude that the townships are entitled to summary judgment on the parties' claims concerning O.R.C. § 519.211.

First, "the business claiming public-utility status" under § 519.211 "bears the burden of offering sufficient evidence on these factors." *Rumpke*, *supra*, 134 Ohio St. 3d at 100.

But the only evidence that New Par and STC cite to support the contention that New Par is a public utility is New Par's PUCO Certificate. (Doc. 51, PageID 642–43, *Ottawa Twp.* docket). As just seen, however, such a certificate does not establish that New Par is also a

"public utility" for purposes of § 519.211. *See Meadows*, *supra*, 130 Ohio App. 3d at 710;

*Claridon Township*, *supra*, 1987 WL 14174 at *3. As far as the Ohio cases are concerned, the

PUCO Certificate is either no evidence at all of public-utility status or the proverbial "mere

scintilla of evidence" that cannot overcome a motion for summary judgment.

Second, "a party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A).

Here, however, STC and New Par do not cite anything in the record to establish the "two

factors, i.e., public concern and public service, which must be taken into consideration to

determine whether an entity is a public utility for purposes of R.C. 519.211." *Rumpke*, *supra*,

134 Ohio St. 3d at 98.

I accordingly have no basis to conclude that a reasonable fact-finder could conclude that

New Par is a public utility, such that the towers STC wishes to build are "proposed to be . . .

principally used by a public utility," O.R.C. § 519.211(B)(1)(b), and therefore exempt, absent

compliance with § 519.211(B)(4)(a), from township regulation. *See Meadows*, 130 Ohio App. 3d

at 709–10; *Claridon Twp.*, *supra*, 1987 WL 14174 at *3; *Springfield Twp.*, *supra*, 1998 WL

469871 at *3

Third, the Ohio Supreme Court has refused to adopt a bright-line rule that "all wireless

telecommunications providers [are] public utilities" for purposes of § 519.211. *Davis*, *supra*, 95

Ohio St. 3d at 277.

Instead, wireless providers such as New Par – just like other entities claiming to be public

utilities under § 519.211 – must establish "the nature of the services provided by those

companies, using the multifactored test established in prior case law." *Id.*; *see also A&B Refuse*,

*supra*, 64 Ohio St. 3d at 389 ("The fact that a private business provides a good or service

associated with the usual subject matter of a public utility does not give rise to a presumption that it is devoted to public service.").

In this case, however, New Par and STC have simply failed to offer any evidence to prove public-utility status under the multifactored test that the Ohio Supreme Court has established.

Finally, STC's argument that, "[r]ealistically, the issue of proof [of New Par's status as a public utility], or sufficiency of proof, is one for trial and not motion practice" has no merit. (Doc. 51, PageID 642 at n.4, *Ottawa Twp.* docket).

As STC recognized in its own motion for summary judgment, a Rule 56 motion "is a means by which to challenge the opposing party to put up or shut up on a critical issue." (Doc. 44, PageID 343) (internal quotation marks omitted).

By their motions, the Trustees challenged STC and New Par to "put up on [the] critical issue" whether New Par was a public utility. It then became STC and New Par's burden to "set forth specific facts showing that there is a genuine issue for trial" on the public-utility question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Because the companies failed to set forth any such facts, the townships are entitled to judgment as a matter of law on the claims under § 519.211.

\* \* \*

If an Ohio township wishes to regulate the construction of a telecommunications tower that is "proposed to be owned by or for the principal use of a public utility," O.R.C. § 519.211(B)(1)(b), it must comply with the provisions of O.R.C. § 519.211(B).

In this case, STC and New Par have introduced no evidence that would permit a reasonable jury to find that New Par, for whose principal use STC intends to build the towers, is

a public utility. For that reason, the townships need not comply with § 519.211(B)(4)(a) in order to use their zoning codes to regulate the construction of the proposed towers.

The Ottawa Township Board of Trustees is therefore entitled to summary judgment on its claim under § 519.211 and on STC and New Par's similar claims. And the Napoleon Township Board of Trustees and Rettig are entitled to summary judgment on STC's claims under § 519.211 in the *Rettig* litigation.

### B. Telecommunications Act Claims

"The Telecommunications Act of 1996 preserves the authority of state and local governments to regulate 'the placement, construction, and modification of personal wireless facilities.'" *STC Towers, LLC v. Rettig*, 2017 WL 4417754, *2 (N.D. Ohio 2017) (Carr, J.) (quoting 47 U.S.C. § 332(c)(7)(B)(i)).

Such regulation must not, however, "unreasonably discriminate among providers of functionally equivalent services" or "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(I), (II).

### 1. STC's Motions

STC and New Par have moved for summary judgment on their claims under the Telecommunications Act. (Doc. 44, PageID 330, *Ottawa Twp.* docket; Doc. 36 at 1, *Rettig* docket). Their argument seems[2] to be that the townships, in refusing to let STC build the towers unless STC complies with their zoning codes, are effectively prohibiting the provision of wireless services.

---

[2] I say "seems" because the companies' pleadings do not actually make an argument showing why they are entitled to summary judgment on their Telecommunications Act claims. Indeed, the summary-judgment motion in the *Rettig* case does not even cite that statute, and neither motion cites or discusses the Sixth Circuit's controlling decision in *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794 (6th Cir. 2012).

"The Sixth Circuit employs a two-part test to determine whether a denial of an application amounts to an effective prohibition of service, stating that 'there must be (1) a showing of a significant gap in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations.'" *Eco-Site, Inc. v. City of Huber Heights, Ohio*, 2018 WL 3092901, *7 (S.D. Ohio) (quoting *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 805 (6th Cir. 2012)).

"If a plaintiff satisfies both parts of this test, the denial results in an effective prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)." *Id.*

STC and New Par are not entitled to summary judgment for at least two reasons.

First, the premise of their argument is that the townships, by virtue of their alleged noncompliance with the notice requirements of O.R.C. § 519.211(B)(4)(a), have no power to subject the proposed towers to their zoning codes.

But given STC's and New Par's failure to establish that the towers are "proposed to be . . . for the principal use of a public utility," O.R.C. § 519.211(B)(1)(b), the townships were free to regulate the towers without regard to the other provisions of § 519.211(B). The townships' insistence that the towers comply with otherwise applicable zoning regulations cannot, without more, support the companies' claims under § 332(c)(7)(B)(i)(II).

Second, STC and New Par have not, as Rule 56(c)(1)(A) demands, cited any evidence in the record that would permit a fact-finder to conclude that the townships' conduct amounted to an effective prohibition of wireless service. Because the companies' briefs do not address the merits of their claims in any way, I have no basis to conclude that there is "a significant gap in service coverage" or that "the manner in which [STC and New Par] propose[ ] to fill the

significant gap in service is the least intrusive on the values that the denial sought to serve." *W. Bloomfield*, *supra*, 632 F.3d at 805, 808.

Accordingly, I will deny STC's and New Par's motions for summary judgment on their Telecommunications Act claims.

## 2. Ottawa Township's Motion

In the *Ottawa Township* matter, the Board of Trustees has moved for summary judgment on the Telecommunications Act claims. (Doc. 49, PageID 574–79).

### a. Parties' Arguments

The Trustees argue that this claim is either unexhausted or unripe due to STC's failure to "playout" the administrative process. (*Id.*, PageID 579).

According to the Trustees, after they advised STC by letter in January, 2016 that it intended to use its zoning code to regulate the tower, STC never submitted a request for "authorization to place, construct or modify personal wireless service facilities." (*Id.*, PageID 577). Nor did STC appeal any decision relative to such a request to the Ottawa Township Zoning Board.

Because the township's zoning authorities never acted with "finality" regarding STC's plans to build the tower, the Trustees contend that they are entitled to summary judgment on the Telecommunications Act claim.

STC does not dispute that it never applied for permission to build the tower, but it contends that this omission is not relevant.

The company first argues that there is no requirement that its claim under § 332(c)(7)(B)(i)(II) may "be presented only upon the final action or failure to act of a governmental authority." (Doc. 51, PageID 637, 638–39). STC then argues that, given the

Trustees' alleged failure to comply with O.R.C. § 519.211(B), the Trustees have no power to regulate its proposed tower and STC thus has no obligation to apply for permission to build the tower. (*Id.*, PageID 641).

### b. Discussion

Having considered these arguments, I agree with the Trustees that they are entitled to summary judgment on the Telecommunications Act claim. This is so because STC and New Par have not shown that they have been "adversely affected by any final action or failure to act by a state or local government or any instrumentality thereof[.]" 47 U.S.C. § 332(c)(7)(B)(v).

First, having concluded that STC's and New Par's failure to establish that New Par is a public utility enabled Ottawa Township to regulate the proposed tower without regard to O.R.C. § 519.211(B)(4)(a), I necessarily reject STC's argument that the Trustees' alleged failure to comply with § 519.211(B)(4)(a) relieved STC of the obligation to apply for permission to build the tower.

Second, the language of the Telecommunication Act refutes STC's argument that it can bring its effective-prohibition claim against Ottawa Township in the absence of "final action" by the relevant zoning authority.

For one thing, the Telecommunications Act "provides relief to those who are denied permission to build telecommunications facilities at the state or local level." *Global Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 78 (1st Cir. 2016). Such relief is available "if state or local land use authorities have denied such permission through 'final action.'" *Id*.

For another, while STC cites no case law to support its argument, the federal courts that have considered similar arguments have rejected them.

Indeed, the courts have uniformly held that a wireless provider's effective-prohibition claim is not ripe, or is otherwise premature, if the relevant zoning authority has not denied an application from the provider. *See Global Tower Assets, LLC v. Town of Mt. Vernon*, 22 F. Supp. 3d 47, 56 (D. Me. 2014) ("an effective prohibition claim is not ripe until a local government body has denied a plaintiff's application"); *New Cingular Wireless PCS, LLC v. Town of Stoddard*, 853 F. Supp. 2d 198, 207 (D.N.H. 2012) (effective-prohibition claim was premature because zoning board had not denied wireless provider's application); *Cox Commc'ns PCS, LP v. City of San Marcos*, 204 F. Supp. 2d 1272, 1277 (S.D. Cal. 2002) ("[B]ecause the defendants have not rejected Sprint's application . . . they have not taken final action. Because no *decision or final action* has been made on Sprint's request, the company has failed to state a cause of action under . . . [§]332(c)(7)(B)(i)(II).") (emphasis in original); *Upstate Tower Co., LLC v. Town of Kiantone, N.Y.*, 2016 WL 7178321, *6 (N.D.N.Y. 2016) ("[T]he Court finds that it cannot grant Plaintiff injunctive relief because claims for effective prohibition . . . under the [Act] require as a precondition that the Town have denied Plaintiff's application.").

Here, it is undisputed that STC and New Par never applied to Ottawa Township for permission to build the telecommunications tower at issue. For that reason, the township's zoning authorities could not have taken, and in fact have not taken, "final action" regarding STC's application.

In the absence of such "final action," STC's and New Par's claims are premature, and Ottawa Township is entitled to summary judgment on that basis.

### 3. Napoleon Township and Rettig's Motion

The Napoleon Township Board of Trustees and Rettig have raised the same

exhaustion/ripeness argument as the Board of Trustees raised in the *Ottawa Township* litigation,

and STC has responded with essentially the same arguments in opposition as it did in that case.

According to the Trustees, STC applied to the township in November, 2015 for "a

conditional use permit in an effort to commence the process for obtaining Township approval to

construct the tower at the desired location." (Doc. 40, PageID 423, *Rettig* docket).[3]

It appears that Rettig then consulted the Henry County Prosecutor's Office about STC's

application. (*Id.*). By letter of November 30, 2015, an assistant county prosecutor counseled

Rettig that "the proposed construction of a wireless telecommunications facility at [STC's

chosen site] is not permitted under the existing Napoleon Township Zoning Regulation."

(Doc. 1–20, PageID 38).

Following what appears to have been a lengthy back-and-forth between the parties, Rettig

set forth his understanding of the parties' positions in a January, 2015 letter to STC:

> As you know, the proposed site location is within an area of Napoleon Township
> zoned Rural Residential. Pursuant to the Township's zoning regulation, the
> wireless telecommunications facility would not be a permitted use or a
> conditionally permitted [use] at the proposed location. Nonetheless, a conditional
> use permit was sought, and various formalities were undertaken to comply with
> the conditional permitting procedure. To date, the Township has not issued or
> authorized the issuance of a conditional use permit[.]
>
> I would note that during the course of the discussions/negotiations on this matter,
> additional correspondence has been provided on behalf of Verizon in an effort to

---

[3] In its answers to Napoleon Township's interrogatories and requests for admission, STC acknowledged that it had originally submitted an application for a conditional use permit on October 16, 2015. (Doc. 40–1, PageID 441). Thereafter, STC determined that it should not have submitted the application, and it asked the township to withdraw the application. (*Id.*, PageID 442). It is unclear whether the township in fact withdrew that application. (*Id.*). In any event, STC also admitted that it had submitted a similar application on November 10, 2015, and that this application "was not withdrawn." (*Id.*, PageID 443).

demonstrate the need for a wireless telecommunications facility at the proposed location. Several alternative locations were suggested on behalf of the Township, and it is my understanding that these were determined to be less than desirable than the proposed location[.]

At this point, I would advise the Township does not intend to authorize the issuance of a conditional use permit, as requested – however, there is a desire to cooperate with Verizon and to facilitate the construction of a new wireless telecommunications facility within the Township. It is respectfully requested that alternative sites be explored. Based on prior communications, it is understood that viable alternatives may be located within the Rural Residential district – and I would indicate that the Township would be much more amenable to granting a variance from the zoning regulations if the alternative locations were on sites with fewer residences surrounding the new facility.

I look forward to working with you toward a mutually agreeable resolution of this matter.

(Doc. 1–18, PageID 36, *Rettig* docket).

In light of these events, the Trustees argue that STC "received an initial decision from the Zoning Inspector/Township advising that the Township Zoning Resolution did not permit the construction of the tower where desired" by STC. (Doc. 40, PageID 426). The Trustees contend that it was then incumbent upon STC to appeal that decision to the Township Board of Zoning Appeals, which has jurisdiction over appeals "by any person, firm, or corporation . . . deeming himself or itself adversely affected by the decision of the Zoning Inspector." (Doc. 40–2, PageID 516).

I agree that STC's failure to pursue the matter to the Board of Zoning Appeals means that there is no "final action" for purposes of STC's effective-prohibition claim.

At best, STC obtained only an initial decision from the first decisionmaker (Rettig) in a two-step decision-making framework. In similar circumstances, courts have held that there is no final action when the initial decision is subject to review by a second decision-maker. *See Town of Rome*, *supra*, 810 F.3d at 87–88 (wireless provider's effective-prohibition claim was

premature because "the prospect of the Board of Appeals' review of the Planning Board's denial bars that denial from qualifying as 'final action' under" the Telecommunications Act).

Again, STC's only response is that the Trustees had no power to regulate its proposed tower, given their alleged noncompliance with O.R.C. § 519.211. That argument has no merit, however, as I have already explained.

Because the Trustees and Rettig have not taken "final action" with respect to STC's application to construct the cell tower, the Trustees and Rettig are entitled to summary judgment on the Telecommunications Act claim.[4]

### C. Tortious Interference Claims

Under Ohio law, the elements of tortious interference with contract are: 1) the existence of a contract; 2) the defendant's knowledge of the contract; 3) the defendant's intentional procurement of the contract's breach; 4) lack of justification; and 5) damages. *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 F. App'x 717, 723 (6th Cir. 2017).

The elements of tortious interference with business relations are the same, except that the third element requires the plaintiff to prove that "the wrongdoer intentionally and improperly

_____

[4] In a prior order, I held that Rettig's issuance of the stop-work order in February, 2017 was a "final action" that triggered the statute of limitations on STC's claim. *See Rettig*, *supra*, 2017 WL 4417754 at *3. That decision is not inconsistent with my ruling here. First, the issue before me in *Rettig*, *supra*, was whether it was the stop-work order, the county prosecutor's letter to Rettig, or Rettig's letter to STC that triggered the limitations period. *Id.* I accordingly had no occasion to consider the significance of STC's failure to pursue its application to the Board of Zoning Appeals on the "final action" requirement of STC's effective-prohibition claim. More importantly, STC's complaint and the parties' pleadings created the impression that "STC never sought either permission to build the cell tower or a conditional-use permit that would authorize it to place the tower in a residential district." *Rettig*, *supra*, 2017 WL 4417754 at *3; (*see also* Doc. 13, PageID 131 (STC's argument in opposition to statute-of-limitations defense that "there was nothing to deny" because STC's 519.211 notice to the township "was not a request for a permit or otherwise")).The record now before me now establishes that STC did in fact apply for such permission, but short-circuited the review process by suing in this court without taking the matter to the Board of Zoning Appeals.

acted to prevent a contract formation, procure a contractual breach, or terminate a business relationship." *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 924 (N.D. Ohio 2011) (Oliver, J.).

In both the *Ottawa Township* and *Rettig* cases, the Trustees argue that they are immune from liability on these claims under O.R.C. § 2744.02(A)(1). (Doc. 49, PageID 586 –87; *Ottawa Twp.* docket; Doc. 40, PageID 433–34, *Rettig* docket).

That statute provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* Although there are exceptions to this grant of immunity, *see* O.R.C. § 2744.02(B)(1)–(5), the townships argue that none apply here.

In addition, the Ottawa Township Board of Trustees argues that there is no evidence to show that there has been a breach of any contract to which STC and/or New Par is a party. (Doc. 49, PageID 586 n.11; Doc. 56, PageID 851).

STC responds that the immunity defense is not available to the townships because "the conduct of the Township and its officials – who did not even bother to learn the law – is clearly reckless, in bad faith and may even rise to the level of wanton." This argument relies on O.R.C. § 2744.03(A)(5), which eliminates a municipality's immunity if "the injury. . . or loss . . . resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton and reckless manner."

I conclude that the townships are entitled to summary judgment on the claims of tortious interference.

First, in the *Ottawa Township* case, STC admitted that "there has been no breach of any contract between STC and Verizon Wireless" and that "there has been no breach or termination of a business relationship between STC and Verizon Wireless." (Doc. 49–2, PageID 606–07). In the absence of such a breach or termination, however, STC cannot make out a successful tortious interference claim against Ottawa Township. *Wylie & Sons*, *supra*, 696 F. App'x at 723; *Office Depot*, *supra*, 821 F. Supp. 2d at 924.

Second, STC's tortious interference claims depend on a flawed premise – namely, that the Townships could not use their zoning codes to regulate the construction of the proposed towers unless they complied with O.R.C. § 519.211(B)(4)(a).

As discussed at length earlier in this opinion, however, the Townships had no such obligation, given STC and New Par's failure to show a genuine factual dispute on the question whether the company for whose benefit the towers were to be built – New Par – was a "public utility" for purposes of § 519.211. For that reason, there is no basis to conclude that the townships' insistence that STC comply with their generally applicable zoning codes amounted to tortious interference, let alone to malicious, bad-faith, or wanton and reckless misconduct that would deprive the townships of the immunity that § 2744.02(A) otherwise provides.

### D. Motion to Strike

Finally, I deny STC and New Par's motion to strike the township's reply brief in the *Ottawa Township* litigation. (Doc. 57).

According to STC and New Par, an order I entered in the *Rettig* litigation denying Napoleon Township's motion for an extension of time to file its reply brief in that case and

stating that "[t]his concludes the briefing on the motion for summary judgment, and the case is decisional" operated to forbid Ottawa Township from filing its reply. (Doc. 49, *Rettig* docket).

This request is baseless.

The agreed-upon briefing schedule for dispositive motions in the *Ottawa Township* matter (Doc. 38, *Ottawa Twp.* docket) gave the township until January 29, 2019 to file its final reply brief in support of its cross-motion for summary judgment. (Non-document entry of Aug. 6, 2018). The fact that I denied an extension motion in the *Rettig* case on January 16, 2019 simply had no bearing on Ottawa Township's ability to file its reply brief. Accepting the companies' argument would be the height of unfairness, effectively shortening, by nearly two weeks, the reply brief's deadline with no notice, and for no good reason.

For similar reasons, I deny the township's motion to clarify (Doc. 54) my January 16, 2019 order to reflect that it had no effect on the briefing schedule in the *Ottawa Township* case.

## Conclusion

It is, therefore,

ORDERED THAT:

1.     STC and New Par's joint motion for partial summary judgment (Doc. 44) in Case No. 3:17CV228 be, and the same hereby is, denied.

2.     STC's motion for partial summary judgment (Doc. 36) in Case No. 3:17CV419 be, and the same hereby is, denied.

3.     The Ottawa Township Board of Trustees' cross-motion for summary judgment (Doc. 49) in Case No. 3:17CV228 be, and the same hereby is, granted as to (1) the claim for relief in its amended complaint and (2) all claims in STC and New Par's counter-claim.

4.  The Napoleon Township Board of Trustees and Nicholas Rettig's motion for summary judgment (Doc. 40) in Case No. 3:17CV419 be, and the same hereby is, granted.

5.  STC and New Par's motion to strike and for attorney fees (Doc. 57) in Case No. 3:17CV228 be, and the same hereby is, denied.

6.  The Ottawa Township Board of Trustees' motion to clarify the court's order of January 16, 2019 (Doc. 54) in Case No. 3:17CV228 be, and the same hereby is, denied as moot.

7.  STC's motion to compel (Doc. 32) in Case No. 3:17CV419 be, and the same hereby is, deemed withdrawn based on the representation of STC's counsel that the dispute underlying the motion has been resolved.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge